**G. R. SPONAUGLE & SONS, INC.,**
a Pennsylvania corporation,
Plaintiff,

v.

**McKNIGHT CONSTRUCTION CO.,**
a Pennsylvania corporation, et al.,
Defendants.

Superior Court of Delaware,
New Castle.

Feb. 28, 1973.

Jack Jacobs, of Young, Conaway, Stargatt & Taylor, Wilmington, for plaintiff.

Richard J. Abrams, of Richards, Layton & Finger, Wilmington, for defendants.

## OPINION ON MOTION FOR SUMMARY JUDGMENT BY DEFENDANT

TAYLOR, Judge.

Plaintiff, a subcontractor, filed an action for mechanic's lien against a shopping center building owned by the defendant Betty Gay of Delaware, Inc. [Betty Gay] and for judgment against defendant McKnight Construction Company [contractor], the general contractor, which is currently in receivership. A third defendant, Gaylords National Corp., has been voluntarily dismissed as a party. The amount claimed is $228,345.13, of which $115,709.10 is asserted to be due under the contract between plaintiff and contractor, and $112,636.03 is asserted to be due for "extra work outside of the contract." Betty Gay has moved for summary judgment on a variety of grounds which will be hereinafter discussed.

### I

### CAPACITY TO SUE

The first issue raised by Betty Gay is whether plaintiff, a Pennsylvania corporation, was entitled to proceed with this mechanic's lien action since plaintiff had not complied with 8 Del.C. § 371 at the time of the filing of this action. Preliminary to this consideration is the question of whether this issue has properly been raised by the pleadings. 8 Del.C. § 383(a) provides that a foreign corporation which is required to comply with 8 Del.C. § 371 and which has done business in Delaware without such compliance "shall not maintain any action or special proceeding in this State unless and until such corporation has been authorized to do business in this State and has paid to the State all fees . . . .".

The failure of a foreign corporation to qualify is a matter of defense to be raised in the pleadings. Standard Sewing-Mach. Co. v. Frame, Del.Super., 2 Pennewill 430, 48 A. 188 (1900). The Delaware Supreme Court held in Model Heating Co. v. Magarity, Del.Supr., 2 Boyce 459, 81 A. 394 (1911), that a contract made by a foreign corporation while doing business in this State without qualifying to do business is not invalid in this State and that the capacity of the corporation to enforce the contract can be raised only by plea in abatement. 1 Woolley on Delaware Practice, p. 337, § 468 states: "the only way in which a defendant can except to the capacity of the plaintiff to sue, as for . . . non-compliance with corporation laws, is by a plea in abatement." Here, the issue is whether the plaintiff corporation had the capacity to sue at the time it filed this action.

Rule 9(a) of the Civil Rules of this Court provides: "When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued . . . ., he shall do so by specific negative averment. . . ., which negative averment shall include such supporting particulars as are peculiarly within the pleader's knowledge." An objection to capacity is characterized as "a matter of abatement". Barrack v. Van Dusen, 3 Cir., 309 F.2d 953 (1963). As such, it falls within the class of "threshold defenses" and such issues must be raised and disposed of at the outset of the suit. 5 Federal Practice and Procedure, Wright and Miller, p. 397, § 1295; Martin v. American Employers Ins. Co., 1 Cir., 439 F.2d 1035 (1971). The issue of whether a corporation has status to litigate is a question of capacity, and must be timely raised. Trounstine v. Bauer, Pogue & Co., 2 Cir., 144 F.2d 379 (1944).

■ The answer filed by Betty Gay, after responding to the specific allegations of the complaint, contained affirmative defenses (1) failure to state a claim for which relief may be granted, (2) that the claim was not timely filed, (3) that the labor and materials were not furnished on the credit of the structure, and (4) that defendant is not liable for in personam judgment. On the same date of filing of the answer, Betty Gay filed a counterclaim against plaintiff for any amount which a subcontractor under plaintiff which had filed a separate mechanic's lien action against Betty Gay might obtain against Betty Gay. Thereafter, Betty Gay and plaintiff proceeded with extensive discovery as to the merits of this case. Subsequently, the answer of Betty Gay was amended to add affirmative defenses that (1) plaintiff by the subcontract waived and released its rights to file a mechanic's lien, (2) plaintiff acknowledged receipt of payment and satisfaction of the claim, (3) subsequent to filing of the action plaintiff waived, released and surrendered its lien on claim, and (4) plaintiff is barred by promissory and equitable estoppel. From an examination of the pleadings, it appears that the issue of the capacity of plaintiff to file the mechanic's lien action was not raised in a pleading and was first raised in defendant's initial brief on its motion for summary judgment.

■ A motion for summary judgment should be decided on the pleadings, affidavits, product of discovery and other factual matters properly in the record. Phillips v. Delaware Power & Light Co., Del.Supr., 216 A.2d 281 (1966); Matas v. Green, Del.Super., 3 Storey 473, 171 A.2d 916 (1961); Van Dyke v. Pennsylvania R. Co., Del.Super., 7 Terry 529, 86 A.2d 346 (1952). Since this issue has not been raised as provided in Rule 9(a), it is not before the Court.

## II

## WAIVER CLAUSE IN CONTRACT

■ Betty Gay next asserts that plaintiff has waived its right to a mechanic's lien by virtue of a provision in the subcontract. A reading of the provision indicates that by its terms plaintiff did waive its right to file a mechanic's lien at least as to matters covered by the contract. Plaintiff undertakes to avoid the effect of this clause by several arguments. First, plaintiff contends that the clause was "boiler plate" having been inadvertently inserted by the contractor without having been intended to be a part of the subcontract. If so, it was one of twenty-three consecutive printed clauses in the subcontract which the parties signed, each page bearing the initials of one of the parties.

In support of this position plaintiff's principal officer states that he discussed the matter with the contractor and the contractor indicated a willingness to put in writing the fact that the clause was inserted by mistake. However, no such writing was ever produced. Nor does plaintiff contend that the agreement was modified, either orally or in writing, to delete the clause.[1] Plaintiff does not seek to show that the parties failed to enter into a contract or that this was "a sham agreement" or a "non-existent agreement". Compare 71 A.L.R.2d 382; Smilow v. Dickerson, 357 Pa. 455, 54 A.2d 883 (1947). Furthermore, this is not a case where it is contended that the subcontract or even the clause is the product of fraud. There has been no action to reform the instrument. Cf. Gracelawn Memorial Park v. Eastern Memorial Consultants, Del.Ch., 280 A.2d 745 (1971). Plaintiff's effort to escape the effect of a clause of the contract on this ground in this action is barred by the parol evidence rule. Katz v. Exclusive Auto

---

1. The subcontract provided that it constituted "the entire and only agreement between the parties" and that it cannot be "modified, altered, amended, changed or cancelled nor any provision hereof waived or abrogated, except by an instrument in writing duly executed . . .".

Leasing Co., Del.Super., 282 A.2d 866 (1971).

Plaintiff next contends that there was no consideration for the waiver clause in the subcontract. This contention proceeds from the premise that a contract may be segmented and each segment tested to determine whether consideration exists for the segment.

A waiver of such lien may be by separate agreement[2] or it may be incorporated with other undertakings into one agreement.[3] If it is by separate agreement, it must be supported by separate consideration. If it is incorporated as a part of a more comprehensive agreement, the consideration requirement runs to the agreement as a whole.

In this case the contract was a single document consisting of many clauses, and there is nothing to indicate that it was not intended to be a single contract. There were undertakings on the part of each party which in their totality constituted the consideration for the contract. Cf. Equitable Trust Co. v. Gallagher, Del.Supr. 34 Del.Ch. 76, 99 A.2d 490 (1953); 1 Corbin on Contracts, p. 611, § 142. No single clause of the contract should be tested separately to determine whether an item of consideration can be identified specially with that clause. ibid; Gottlieb v. Heyden

Chemical Corp., Del.Supr. 33 Del.Ch. 82, 90 A.2d 660 (1952). Absence of motivation or desire to insert a clause should not be equated with absence of consideration for the contract. I find nothing which applies different requirements of consideration in the case of a waiver of mechanic's lien than in other contractual undertakings.

There remains the question of whether Betty Gay is entitled to assert this clause which is found only in the contract between the plaintiff and the general contractor. Betty Gay was not a party to it. A third party beneficiary may recover on a contract made for its benefit. Royal Indemnity Co. v. Alexander Industries, Inc., Del.Supr., 211 A.2d 919 (1965); Wilmington Housing Authority v. Fidelity & Deposit Co., Del.Supr., 4 Terry 381, 47 A.2d 524 (1946). The waiver provision of the subcontract refers to liens against the premises to which the subcontract relates. The clear inference from this language is that it is intended for the benefit not only of the contractor but of those having property interest in the premises. Accordingly, the Court holds that those having a property interest in the premises are entitled to claim the benefit of the waiver provision.[4]

Finally, plaintiff contends that the waiver provision does not extend to "extra work."

2. See Townsend v. Barlow, 101 Conn. 86, 124 A. 832 (1924); Weinberg v. Valente, 79 Conn. 247, 64 A. 337 (1906); Persky v. Puglisi, 101 Conn. 658, 127 A. 351 (1925).

3. See Commonwealth Title Insurance & Trust Co. v. Ellis, Pa.Supr., 192 Pa. 321, 43 A. 1034 (1899); Stoneback v. Waters, 198 Pa. 459, 48 A. 296 (1901); Mitchell v. Wrightstown Community Apartments, 4 N.J.Super. 321, 67 A.2d 203 (1949); Bendik v. Uniontown S. R. Co., Pa.Supr., 408 Pa. 66, 182 A.2d 512 (1962).

4. The "intent" language at the end of the waiver clause reads as follows:
". . . it being the intent of the parties hereto that the Subcontractor shall only possess those rights and remedies against the Contractor which are created by the terms and provisions of this Subcontract and are based upon the contractual relationship between the Contractor and the Subcontractor as defined and limited by this Subcontract."
By its terms this language sets forth the intent as to rights existing between contractor and subcontractor. The Court does not construe this as limiting the right of owner to claim the benefit of the waiver clause as a third party beneficiary. The Court does not conclude that the broad language of the waiver clause is merely "overkill" to accomplish the limited objective stated in the quoted "intent" language.

345

The waiver provision of the contract waives the filing of a lien "against the premises to which the subcontract relates" "for any services performed or materials furnished by, to or for the subcontractor under this subcontract or for any other thing which might have been done by or for the subcontractor pursuant to this subcontract or any modification thereof, or for any other ground, reason or cause whatsoever". It is provided by the Delaware law that the right to a mechanic's lien may be "expressly waived". 25 Del.C. § 2706. However, such a waiver of a statutory right must be given no broader coverage than that which clearly results from a reasonable application of the language of the contract. A waiver of a mechanic's lien must be certain in its terms. If the terms are ambiguous, doubt is resolved against the waiver. 53 Am.Jur.2d, pp. 826–827, Mechanic's Liens §§ 290, 293; 57 C. J.S. Mechanics' Liens § 224 p. 796. The contract specified the work to be performed and provided a total payment of $228,800. It must be concluded that the parties incorporated into the contract all of the work which they specifically contemplated at the time the contract was entered into. The subcontract provided that the contractor could by written order signed by the contractor's authorized representative make changes in "additions to or deletions from the work to be performed." The record does not disclose what, if any, significance this clause may have with respect to the "extra work" involved in this litigation.

The subcontract where the waiver clause is found was the creation of the contractor and not of plaintiff. Doubts as to the scope of the terms should be resolved in favor of the plaintiff and against Betty Gay. B.S.F. Co. v. Philadelphia Nat. Bank, Del.Supr., 204 A.2d 746 (1964); Philadelphia Storage Battery Co. v. Radio Corporation of America, 22 Del. Ch. 211, 194 A. 414 (1937). The clause

does not expressly apply to work which was not covered by the subcontract. Therefore, the waiver clause will be held not to apply to extra work which was not contemplated by the contract as executed.[5] The phrase "for any other ground, reasons or cause whatsoever", must be held to refer to rights and obligations existing at the time of execution of the subcontract and not to rights and obligations arising thereafter. The precise identification and extent of the extra work which was not covered by the written contract is not factually established in the record. Betty Gay contends that the so called extra work was contemplated by the contract. There appears to be a factual dispute on this issue. Therefore, this issue cannot be disposed of on motion for summary judgment.

III

TIMELINESS OF FILING

In view of the Court's ruling above that work performed pursuant to the contract is covered by the waiver of mechanic's lien provision of the contract, it is not necessary to consider whether the filing of the mechanic's lien was timely as to that work.

With respect to the extra work, there appears to be a factual dispute as to whether work admittedly done after December 21, 1971, (90 days prior to the filing of the mechanic's lien action) was a part of the work begun prior to that date as to make the filing timely with respect to the prior work. Accordingly, this issue cannot be disposed of upon summary judgment.

IV

CREDIT OF STRUCTURE

Betty Gay next contends that the plaintiff is not entitled to a mechanic's lien because it has not established that the work was done "on the credit of such structure"

5. The Court is not called upon to consider the validity of an express waiver of liens as to future work which was not con-

templated by the parties at the time of the execution of the waiver provision.

as required by 25 Del.C. § 2712. Betty Gay relies on Voigtmann & Co. v. Wilmington Trust Building Corp., Del.Super., 7 Pennewill 265, 78 A. 920 (1908).

■ 25 Del.C. § 2717, provides that proof that labor or materials was performed or furnished upon or to any structure "shall be prima facie evidence that the same was performed or furnished for and on the credit of such structure." This language was inserted in the mechanic's lien law by 29 Del.Laws, Chapter 225, in 1917 subsequent to *Voigtmann,* supra, which was decided in 1908. Since under the statute the mere furnishing of material or labor is prima facia evidence that it was furnished on the credit of the structure, the rebutting evidence which Betty Gay relies upon does no more than create a fact controversy, precluding a decision on this point at the summary judgment stage.

## V

### ESTOPPEL

Betty Gay contends that plaintiff is estopped to assert this claim because of a Waiver of Lien which plaintiff executed on June 27, 1972, after the filing of this action. Plaintiff received from contractor two checks drawn on contractor's account, in the amount of $175,000 and $53,000, respectively, and at that time executed a Waiver of Lien by which plaintiff waived, released and surrendered "any and all lien or claim or right of lien, to the date of this waiver, for labor and or services furnished upon the premises . . . " "for and in consideration of $228,345.13, representing the amount due to the undersigned uder [sic] the final estimate of which payment is made by check drawn upon immediately available funds . . .". Betty Gay contends that based upon the Waiver of Lien Betty Gay paid out $159,646.28 to contractor. The checks which contractor gave to plaintiff were not honored because of lack of funds in contractor's account.

Plaintiff contends that, because of the recital in the Waiver of Lien that the con-

sideration was a payment "made by check drawn upon immediately available funds", the Waiver of Lien was conditional upon the availability of funds to pay the checks. Plaintiff also contends that the waiver of liens is not binding because it lacked consideration. Betty Gay does not dispute this latter position, but counters that equitable or promissory estoppel compels the enforcement of the Waiver of Lien.

■ The principle is well established that where a subcontractor gives a receipt or waiver of mechanic's lien under circumstances under which an owner might be expected to rely thereon and the owner does in fact rely thereon by changing his position, the subcontractor is estopped to assert the lien. Charles G. Taylor & Sons, Inc. v. Brentwood Construction Co., Del. Super., 189 A.2d 414 (1963). The mere fact that the release of waiver was induced by a check which subsequently was not paid is generally held not to be a bar to the application of the principle of estoppel. 155 A.L.R. 350, 353; Ostrander v. Okerlund, 165 Wash. 18, 4 P.2d 828 (1931); West v. Pinkston, 44 Utah 123, 138 P. 1152 (1914); Stewart Lumber Co. v. Unique Home Builders, Inc., 160 Wash. 273, 294 P. 988 (1931); Nelson & Castrup v. Culver, 94 Wash. 548, 162 P. 978 (1917).

Plaintiff attempts to distinguish these cases on the ground that in general they unequivocally recite that payment had been made in full, while the Waiver of Lien in this case recited checks "drawn upon immediately available funds". This language, standing alone, is insufficient to impose upon the owner a duty of further inquiry. Compare Detroit Graphite Co. v. Carney, 175 Okl. 583, 53 P.2d 584 (1936), where the owner being aware that alleged payment had been made by check inquired of the contractor whether the bill had in fact been paid.

None of the cases cited by the parties involves the fact situation of this case. Here, prior to the execution of the waiver, the subcontractor had filed this action for

a claim of $228,345.13 and Betty Gay had retained local counsel and had answered and participated in discovery. Betty Gay had recieved from contractor shortly before the filing of this action three waivers of lien purportedly executed by plaintiff on February 22, 1972, each showing a different amount due plaintiff, totaling $10,772.-00. Moreover, it appears that Betty Gay did not accept these waivers as being valid. Furthermore, it appears that Gaylord's National Corporation [Gaylord], the parent corporation of Betty Gay, was active in administering plaintiff's work and had dealt directly with plaintiff and was sufficiently aware of contractor's financial difficulties that all subcontractors were directed to submit their bills directly to Gaylord.

■ If Betty Gay is entitled to the benefit of equitable estoppel, plaintiff is entitled to the benefit of the counterequities. 28 Am.Jur.2d, p. 631 Estoppel & Waiver § 28; Thorp Finance Corp. v. LeMire, 264 Wis. 220, 58 N.W.2d 641 (1954). A party must use the means available to ascertain the facts or conditions and it may not predicate an estoppel upon an unwarranted reliance. Hampton v. Paramount Pictures Corp., 9 Cir., 279 F.2d 100 (1960). This principle has been accepted in this State. Wilson v. American Insurance Co., Del.Supr., 209 A.2d 902 (1965); Ainscow v. Alexander, Del.Super., 28 Del.Ch. 545, 39 A.2d 54 (1944).

■ Betty Gay and plaintiff were both active participants in the litigation and were both represented by counsel. Contractor did not appear in this litigation. A direct relationship existed as to this claim between plaintiff and Betty Gay as parties litigant. Under these circumstances, Betty Gay, when it reverted to dealing indirectly with the subcontractor through the contractor, assumed a risk which it did not have prior to the litigation. It was not warranted at that stage in relying upon a presumption of regularity of the dealings between contractor and subcontractor af-

fecting the litigation without communicating with its legal adversary concerning the validity and regularity of the dealings. The Court holds that under these facts upon the present record Betty Gay is not entitled to the benefit of the Waiver of Lien dated June 27, 1972.

The parties will confer with the Court concerning the form of Order.